By the Coubt.—Sedgwick, Ch. J.
The action was for damages from the negligence of a driver of defendant in managing a car, so that the leg o.f plaintiff was run over.
The court below dismissed the complaint on the ground that the case did not show that the alleged negligence of defendant was the sole cause of the accident.
*189 The plaintiff was, at the time of the accident, a girl of less than two years of age, and therefor non sui juris. McGarry v. Loomis, 63 N. Y. 104; Prendegast v. N. Y. C. & H. R. R. R. Co., 58 Ib. 652, Birkett v. Knickerbocker Ice. Co., 110 Ib. 504. The testimony showed, that her conduct contributed to the injury, and if she had been adult she would have had no action.
By the law of this state, if her parents’ negligence suffered her to go into the danger which ended in her injury, she has no action ; and if on the trail it incontrovertibly appeared that there was such negligence, and the jury could not have found, properly, to the contrary, the dismissal of the complaint below was correct. ' There is no intention here of deciding whether or not in the case of a plaintiff non sui juris, and therefore not capable of negligence, the plaintiff must prove that the parents or guardians were not negligent, or whether that is matter of defence.
The plaintiff, as her mother testified, was scarcely able to talk, and could speak a few words only. About four in the afternoon the child was with her mother in the kitchen. The mother was cooking and was afraid the child would burn herself. She took the child by the hand into the store to the father, and said to him to be so kind and take some care of the child. The father testified that the mother asked him to watch the child a little. The store door was open. He played with her and talked with her a little. She ran behind a counter. He went to a desk about ten feet from the door, for the purpose of making entries in his account. When there the child was not within his sight. She remained for some time behind the counter. The father, for no other reason that appeared in evidence than that the child needed more attention than he was giving, looked around the counter for *190 the child and then in the bed-room and then heard a noise in the street, He ran out and saw the child had been run over.
The testimony given by the parents evinced that they knew that the child was so young, and so incapable of taking care of herself, that constant and particular care was needed to keep her from the street, where, as the facts undoubtedly showed, it was dangerous to the child to suffer her to go. This is in one respect clearly shown, by the alarm or anxiety of the father when he became conscious that the child was out of his sight and his prompt and hurried effort to find her. The mother would have kept her in a back-room if there had not been a • danger to the child from the hot stove, and that she might do her duty to the child when she took her into the outer room, she put her in care of the father, with the significant request of him.
The father allowed the child to be out of his sight, so that he could not instantly restrain her, if necessary, for a certain length of time. He testified that • she stayed out of his sight for “ ten or fifteen minutes. I don’t know.” He was afterwards asked by the plaintiff’s counsel. How long was it, from the time you saw the child by your side until it was brought back to you ? He answered. “ It was not ten minutes, not two minutes, I mean. I didn’t think she was out at all, so quick it was. It happened so quick I did not think she was out at all.” The mother testified that before the accident, or rather before the husband brought her the child, the child had been in the store scarcely “ about ten or fifteen minutes.”
If the case had gone to the jury, and they had properly passed upon it, they could not have given a rendering to the father’s testimony that would establish the fact that his withdrawal of his observation of the child was so momentary, that it was not *191 negligent. That would give credence to him, when he said : “It happened so quick, I did not think she was out at all.” This was, however, at variance' with his testimony that she was out of his sight ten or fifteen, or even two, minutes, and his occupation in writing in his account three charges to customers, and also his action in searching for her. When he said the child was absent from his side not ten minutes—not two minutes I mean, I didn’t think she was out at all so quick it was, the first part being merely negative and establishing nothing affirmative, the meaning of the whole is to be found in the latter part, with the implication that he could not categorically give the time. If it had simply appeared, on behalf of defendant, that a child of plaintiff’s age, that needed positive restraint to keep her in safety, had gone into danger, when it also appeared that the use of ordinary means of restraint would have prevented her escape, the conclusion of law is, that ordinary means were not used, and a jury could not conclude otherwise. The testimony that has been particularly examined shows, that the plaintiff failed to overcome the presumption of law, by proof of sufficient explanatory facts, for the attempted explanation was incoherent, one part of it varied from the other. Indeed if the extrinsic circumstances, and the indubitable references from them, were to be considered to give weight to one or the other branch of the contradiction, the result would be unfavorable to the plaintiff.
My opinion is, that the judgment should be affirmed with costs.
Dugro, J., concurred.